IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JACOB ZUBERI, *et al.*,              )
                                      )
          Plaintiffs,                 )
                                      )
v.                                    )        Civil Action No. 1:16-cv-1077 (AJT/TCB)
                                      )
DIANA HIREZI, *et al.*,              )
                                      )
          Defendants.                 )
_____)

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jacob and Ashley Zuberi ("plaintiffs" or the "Zuberis") claim that they were the

victims of fraudulent and other wrongful conduct when in July 2015 Jacob Zuberi purchased an

Alexandria, Virginia house from Defendants Diana and Manuel Hirezi (the "Hirezis") for

$465,000.  Briefly summarized, plaintiffs allege that the Hirezis concealed with cosmetic fixes

serious structural defects that make the house uninhabitable and unsellable.  Included as

defendants in addition to the Hirezis are the Hirezis' listing agent and his real estate company

and various contractors that the Hirezis hired to perform certain agreed upon repair work

identified during a pre-closing inspection.

In their 64-page, 287-paragraph, twenty-eight-count Amended Complaint, plaintiffs

assert claims against the Hirezis for fraud (Count I), fraudulent inducement (Count II),

constructive fraud (Count III), breach of contract (Count IV), negligence per se (Counts V-VI),

and violation of the Virginia Consumer Protection Act (Count VII).  It asserts similar claims

against Defendants Classic Realty, Ltd. and George Greene (Counts VIII-XI), Defendant M&M

Plumbing, LLC (Counts XII-XVI), Defendant S. Unlimited, LLC (Counts XVII-XXIII), and

Defendant Advance Structural Concepts, LLC (Counts XXIV-XXVII). Finally, plaintiffs have alleged a civil conspiracy claim against all defendants (Count XXVIII).

Presently pending are four motions to dismiss the Amended Complaint (collectively, the "Motions"). Defendants Classic Realty, Ltd. and George Greene [Doc. No. 51], S. Unlimited, LLC [Doc. No. 54], and M&M Plumbing, LLC [Doc. No. 58] move to dismiss the Amended Complaint in its entirety on the grounds that it fails to state a claim against them. On the same grounds, Defendants Diana and Manuel Hirezi move to dismiss all counts against them except Count IV, alleging a breach of contract [Doc. No. 61].[1]

For the reasons stated below,

(1) the motions filed by Defendants Classic Realty, Ltd. and George Greene, S. Unlimited, and M&M Plumbing, LLC are GRANTED and all claims against them will be dismissed; and

(2) the motion filed by Defendants Diana and Manuel Hirezi will be GRANTED as to all claims filed by plaintiff Ashley Zuberi, who lacks standing to bring any claims pertaining to the purchase of the house; GRANTED as to Counts I, III, V, and VI filed by Plaintiff Jacob Zuberi alleging fraud, constructive fraud, and negligence per se; and otherwise DENIED, leaving for further proceedings Jacob Zuberi's claims for fraudulent inducement (Count II), breach of contract (Count IV), violation of the Virginia Consumer Protection Act (Count VII), and civil conspiracy (Count XXVIII).

## I.    BACKGROUND

The following alleged facts are taken as true for the purposes of the Motions:

---

[1] Defendant Advance Structural Concepts, LLC has not yet entered an appearance although it has been served [Doc. No. 5].

In November 2014, the Hirezis purchased the house located at 6024 Telegraph Road, Alexandria, Virginia for $385,000 (the "Property"). Am. Compl. ¶ 13. The Hirezis are in the business of "'flipping' properties." *Id.* ¶ 3. During their renovation of the Property, the Hirezis learned of structural and related serious issues, which they masked with cosmetic fixes in order to sell it. *Id.* ¶¶ 15-16. Defendant George Greene ("Greene") was the listing agent for the Property. *Id.* ¶ 21. Greene works for Defendant Classic Realty Ltd. ("Classic Realty"), and the Property listing included Greene's name and his association with Classic Realty. *Id.* ¶ 27. His listing stated that the property condition was "Renov/Remod" and described the property as, "Fully renovated & updated home . . . ." *Id.* ¶ 22, Ex. C. Other than this listing, Greene and Classic Realty's only involvement in the transaction was Greene's signing the lead paint disclosure. *See id.* ¶ 34, Ex. A.

On June 27, 2015, Plaintiff Jacob Zuberi and the Hirezis entered a contract for the purchase of the Property for the price of $465,000, which was conditioned upon a home inspection (among other contingencies) (the "Contract"). *Id.* The inspection revealed displacement cracks in the foundation, primarily around the garage, and other issues such as moisture in the basement wall and plumbing issues in the lower-level bathroom. *Id.* ¶ 35, Ex. B.

As a result of the inspection, on July 3, 2015, the parties entered an addendum to the Contract (the "Addendum"), which provided that prior to closing the Hirezis would address certain issues identified by the inspection. *Id.* ¶¶ 35-38, Ex. B. To do so, the Hirezis engaged Defendants S. Unlimited, LLC ("S. Unlimited"), M&M Plumbing, LLC ("M&M Plumbing") and Advance Structural Concepts, LLC ("Advance"). *Id.* ¶¶ 48, 55, 62.

S. Unlimited is a licensed contractor (but not a licensed engineer) that frequently does work for the Hirezis. *Id.* ¶ 55. The Hirezis hired S. Unlimited to fix doors that would not close

and to fix certain cracks in the foundation around the garage area. *Id.* S. Unlimited also certified, presumably in its invoice to the Hirezis, that the foundation was structurally sound. *See id.* ¶¶ 57-59. The Hirezis used the invoice from S. Unlimited to represent to the Zuberis that work listed in the Addendum had been adequately completed. *Id.* ¶ 59. Similarly, the Hirezis hired M&M Plumbing to switch the hot and cold water controls in a lower-level bathroom and to check the basement wall for moisture and leaks. *Id.* ¶¶ 48, 52. M&M Plumbing is not a licensed plumbing or home improvement contractor. *Id.* ¶ 48. The Hirezis also used M&M Plumbing's invoice to demonstrate to the Zuberis their completion of certain work set forth in the Addendum. *Id.* ¶ 53.

On July 23, 2015, following the work done by S. Unlimited and M&M Plumbing, the Zuberis' real estate agent observed a large crack in the foundation wall. *Id.* ¶ 61. The Hirezis then hired Advance, an engineering firm, to evaluate the structure of the home. *Id.* ¶ 62. At the Hirezis' request, Advance limited the scope of its evaluation to the garage area in order to issue a report certifying that there was no "structural problem" with the home. *Id.* ¶¶ 64-66. Thereafter, the Hirezis emailed the Zuberis' agent on July 26, 2015, stating there were "[n]o issues on the structure." *Id.* ¶ 67.

On July 29, 2015, the transaction closed, and the Zuberis moved into the home in August. *Id.* ¶ 70. Subsequently, latent issues connected to the faulty foundation became apparent. *Id.* ¶ 71-73. By January 2016, cracks had formed in the drywall at nearly every window and doorway. *Id.* ¶ 73. In February 2016, the Zuberis had to hire a plumber to fix backed up sewage in the basement shower drain and discovered that the drain was misaligned and could not be repaired. *Id.* The Zuberis moved out in March 2016 after they hired a professional engineer who advised

4

them that the foundation was compromised and posed a serious safety hazard. *Id.* ¶ 74. The Zuberis filed this action on August 22, 2016.

## II.   LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994); *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1994). A claim should be dismissed "if, after accepting all well-pleaded allegations in the plaintiff's complaint as true . . . it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *see also Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001). In considering a motion to dismiss, "the material allegations of the complaint are taken as admitted," *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted), and the court may consider exhibits attached to the complaint, *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F. 2d 1462, 1465 (4th Cir. 1991).

Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.*; *see also Bd. of Trustees v. Sullivant Ave. Properties, LLC*, 508 F. Supp. 2d 473, 475 (E.D. Va. 2007). In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Nevertheless, while Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations in the complaint "must be enough to raise a right to relief above the speculative level" to one that is "plausible on its face." *Id.* As the Supreme Court stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008), "[a] claim has facial plausibility when the

plaintiff pleads factual content that allows the Court to draw a reasonable inference that the defendant is liable for the conduct alleged."

Fraud claims, however, are subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b), which requires that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ." These include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained" as a result. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). But "intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A "lack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." *Harrison*, 176 F.3d at 783 n.5.

### III.   ANALYSIS

### A.   Claims Against Defendants Diana and Manuel Hirezi

The Amended Complaint asserts seven counts against the Hirezis that they move to dismiss:[2] fraud (Count I); fraudulent inducement (Count II); constructive fraud (Count III); negligence per se (Count V); negligence per se against Diana Hirezi (Count VI); violation of the Virginia Consumer Protection Act (Count VII); and civil conspiracy (Count XXVIII).[3]

### 1.   Fraud-Based Claims

Under Virginia law, six independent elements must be pled to state a claim for fraud: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Evaluation Research Corp. v. Alequin*, 439 S.E.2d 387, 390 (Va. 1994). Constructive fraud

---

[2] The Hirezis do not move to dismiss the breach of contract claim against them (Count IV).
[3] Defendants' motions to dismiss the civil conspiracy claim will be addressed in a separate section. *See* Section III.E, *infra*.

differs from actual fraud in that it only requires that the false representation "was made innocently or negligently," rather than intentionally and knowingly with intent to mislead. *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998). Concealment, "whether accomplished by word or conduct," can constitute a false representation, but it must be based on "a knowing and a deliberate decision not to disclose a material fact." *Lambert v. Downtown Garage, Inc.*, 553 S.E.2d 714, 717-18 (Va. 2001) (internal quotation marks omitted). A cause of action for fraud, however, cannot arise solely out of the exercise of a contractual right. *Richmond Metro. Auth*, 507 S.E.2d at 347.

Plaintiffs' three fraud-based claims against the Hirezis all allege that misstatements caused Jacob Zuberi to enter into, and then close on, the Contract to purchase the Property with structural defects. In particular, the claims allege that the Hirezis made false representations by:

- "concealing major horizontal and vertical cracks with caulk, tape, drywall, and/or paint";

- "falsely represent[ing] that the Property had been properly renovated and remodeled";

- "misrepresent[ing] their intention to fix items listed in the Addendum as required by its terms";

- "falsely represent[ing] Unlimited's qualifications to investigate the Property's structural condition, as well as the scope of Advance's investigation of the Property"; and

- "falsely represent[ing] that they repaired all items as required by the Addendum when, in fact, the repairs were cosmetic or otherwise inadequate or were not completed according to the Addendum's terms."

a.   Fraud Based on Concealment

As noted above, concealment of a material fact can constitute a misrepresentation for a fraud claim. *See Lambert*, 553 S.E.2d at 717-18. For example, in *Van Deusen v. Snead*, the Supreme Court of Virginia held that a homebuyer stated a claim for fraud where sellers of a house allegedly had "'put new mortar in cracks around the foundation' and placed 'materials and

the like in front' of cracks in the basement to prevent the prospective purchasers 'from detecting the defects of the house' and 'for the purpose of diverting their attention from the settlement of the house.'" 441 S.E.2d 207, 210 (Va. 1994).  Accepting the allegations in the Amended Complaint as true, plaintiffs have alleged facts sufficient to make plausible their claim that the Hirezis concealed structural issues with cosmetic fixes in their initial renovations in order to induce Jacob Zuberi to enter into the Contract.

b.     Fraud Based on Descriptions in the Real Estate Listing

The real estate listing for the Property listed its condition as "Renov/Remod" and described the Property as, "Fully renovated & updated home . . . ."  Am. Compl., Ex. C.  The Amended Complaint alleges that "fully renovated" is "a term of art that would convey to potential buyers that the Property's known defects had been repaired, and not merely concealed, and that the Property did not need additional renovations and repairs." *Id.* ¶ 23.

Accepting as true all of the well-pled factual allegations in the Amended Complaint and any reasonable inference drawn therefrom, plaintiffs have failed to allege facts sufficient to make plausible their claim that they were fraudulently induced into entering the contract by the statement in the listing that the Property was a "[f]ully renovated & updated home."  First, given all the facts alleged, this opinion-laden description, without more, cannot as a matter of law constitute an actionable misrepresentation that "the Property's known defects had been repaired, and not merely concealed, and that the Property did not need additional renovations and repairs." *See Lambert*, 553 S.E.2d at 717.  Second, the Amended Complaint alleges that Zuberi, in fact, inspected the house before purchasing it and identified a long list of items that needed to be repaired.  In light of the inspection, plaintiffs have not alleged facts sufficient to make plausible any claim that they reasonably relied on that cursory statement in the listing to conclude that

there were no aspects of the house that needed further repairs.  The Court therefore concludes as a matter of law that the alleged misrepresentations in the listing are not misstatements of material fact that plaintiffs reasonably relied on before purchasing the Property.

        c.      Fraud Based on Misrepresenting the Performance of a Contractual Duty

      Misrepresentations that "relate[] to a duty or an obligation that was specifically required" by a contract "do not give rise to a cause of action for actual fraud." *Richmond Metro. Auth.*, 507 S.E.2d at 347; *see also Dunn Const. Co. v. Cloney*, 682 S.E.2d 943, 946-47 (Va. 2009). (explaining that a duty based in contract cannot form the basis for a tort, including fraud).  For this reason, a false representation about the performance of a contractual duty cannot form the basis of a fraud claim, whereas a false representation that precedes, and induces the creation of, a contract can, since it violates a duty that exists independent of the yet-to-be-formed contract. *See, e.g., Abi-Najm v. Concord Condo.*, LLC, 699 S.E.2d 483, 490 (Va. 2010).

      Two of the relied upon misrepresentations (*i.e.*, those pertaining to Unlimited's qualifications and that all the required repairs had been performed) relate to the performance of a contractual duty and therefore cannot form the basis for a fraud claim.  Plaintiffs' alleged intention not to perform the repairs identified in the Addendum at the time it was executed, however, implicate duties that are independent of any contractual duties and therefore may form the basis of a fraud claim. *See id.*

      In sum, the Hirezis' alleged concealment of the structural issues with the Property and misrepresentations regarding their intent to perform the work as set forth in the Addendum are adequately alleged facts that make plausible a claim for fraudulent inducement against the Hirezis.  But the necessarily intentional aspect of these two alleged misrepresentations—concealment of the Property's true condition and of the Hirezis' true state of mind—is

inconsistent with a claim that those misrepresentations were negligent or innocent, and therefore, the Amended Complaint fails to state a claim for constructive fraud against the Hirezis. *See Supervalu, Inc. v. Johnson*, 666 S.E.2d 335, 342 & n.2 (Va. 2008) (holding there is no action for constructive fraud based on "a present intent not to fulfill a promise of future action"); *Temple, Cohn v. Knowledge Connections, Inc.*, 585 S.E.2d 578, 581-82 (Va. 2003). Moreover, given the Court's rulings, the fraud claim against the Hirezis in the Amended Complaint (Count I) is completely duplicative of the fraudulent inducement claim (Count II). *Compare* Am. Compl. ¶¶ 83-84, *with id.* ¶¶ 93, 96. Therefore, the fraud claim against the Hirezis in Count I will also dismissed.

### 2.    Negligence Per Se Claims

Under Virginia law, negligence per se requires that: (1) "the defendant violated a statute enacted for public safety"; (2) "the plaintiff . . . belong[s] to the class of persons for whose benefit the statute was enacted"; (3) "the harm that occurred was of the type against which the statute was designed to protect"; and (4) "the statutory violation [was] a proximate cause of plaintiff's injury." *Collett v. Cordovana*, 772 S.E.2d 584, 589 (Va. 2015).

Plaintiffs' first asserted negligence per se claims against the Hirezis is based on Virginia and local building codes. The building codes' purpose is to prevent unsafe projects. *See Va. Elec. & Power Co. v. Savoy Const. Co.*, 294 S.E.2d 811, 817 (Va. 1982). Plaintiffs' Amended Complaint is deficient because the alleged harm is to Zuberi's economic interests as a purchaser of the Property, which is not the type of harm against which the statute was designed to protect. *See, e.g., Jazayerli v. Renaissance Hous. Corp.*, 55 Va. Cir. 49, 2001 WL 541065, at *2 (2001) ("The protection of homeowners from economic loss is not the underlying purpose of the Uniform Statewide Building Code, rather it is the safety of the public. As a result, that statute

may not serve as the basis for a Negligence Per Se claim when economic loss is the only injury asserted."); *Moskowitz v. Renaissance at Windsong Creek, Inc.*, 52 Va. Cir. 459 (2000) (same).

Plaintiffs next rely on the state laws governing real estate agents for their negligence per se claim against Diana Hirezi. While the real estate licensing laws were enacted to protect the public from fraud and other dishonest conduct on the part of real estate licensees, they do not qualify as laws enacted for the purpose of "public safety" and thus do not serve as a proper basis upon which to assert a claim of negligence per se. Therefore, plaintiffs' negligence per se claim based on the real estate licensing laws is also deficient.[4] Plaintiffs point to no actionable duty that a seller's real estate agent owes to a buyer based on the real estate licensing laws. For these reasons, plaintiffs fail to state a claim for negligence per se against Diana Hirezi in her capacity as a real estate agent or against the Hirezis based on violations of any building codes.

### 3.   Virginia Consumer Protection Act Claim

The Virginia Consumer Protection Act ("VCPA") prohibits certain enumerated fraudulent acts "by a supplier in connection with a consumer transaction." Va. Code Ann. § 59.1-200. Plaintiffs have stated a claim against the Hirezis for a violation of the Virginia Consumer Protection Act for the same reasons they have stated a fraudulent inducement claim. *See Lambert*, 553 S.E.2d at 716 (equating the misrepresentation of fact element in claims for fraud and violation of the Virginia Consumer Protection Act).

---

[4] This conclusion is further endorsed by the 2016 amendment to the Virginia real estate licensing statute, which provides that "nothing in this article shall create a civil cause of action against a licensee." Va. Code. Ann. § 54.1-2142.1. Plaintiffs argue that "the amendment confirms there is no stand-alone cause of action for violations of Section 54.1-2131(B), but it does not mean that statute cannot be used to establish a real estate agent's duties or standard of care under a negligence cause of action." But while the statutory standard may define a standard of care, it does not create a duty where one does not otherwise exist. *See, e.g., Steward ex rel. Steward v. Holland Family Properties, LLC*, 726 S.E.2d 251, 256 (Va. 2012) (declining to "create[] a new [negligence per se] rule that a statute setting a standard of care also creates the duty of care"); *Williamson v. Old Brogue, Inc.*, 350 S.E.2d 621, 624 (Va. 1986) ("[A] statute may define the standard of care to be exercised where there is an underlying common-law duty, but the doctrine of negligence per se does not create a cause of action where none otherwise exists.").

In support of their position that any VCPA claim is insufficient as a matter of law, the Hirezis point to the doctrine of *caveat emptor*, which "imposes on purchasers of real property the duty to use ordinary care in making inquiries and inspecting the premises before entering into a binding commitment to purchase." *Brooks v. Bankson*, 445 S.E.2d 473, 477 (Va. 1994). Though applicable to fraud claims, the doctrine does not shield a seller where "a seller's actions divert the purchaser from the inquiries or inspection that a prudent purchaser would otherwise make," or where "a seller who makes false representations of a material fact, constituting an inducement to the contract, on which the buyer had a right to rely." *Id.* (internal quotations and citations omitted). The Hirezis' alleged concealment of the home's true condition, in the manner alleged, plausibly diverted the Zuberi's inspection so as to render the doctrine inapplicable. *See Van Deusen*, 441 S.E.2d at 210.

**B.      Claims Against Defendants George Greene and Classic Realty Ltd.**

Based on the listing that described the Property as "Renov/Remod" and "Fully renovated & updated home," the Amended Complaint asserts five counts against the listing agent, Greene, and his agency, Classic Realty: fraud (Count VIII); constructive fraud (Count IX); negligence (Count X); negligence per se (Count XI); and civil conspiracy (Count XXVIII). As to that description, plaintiffs allege that Greene knew that "fully renovated" was "a term of art that would convey to potential buyers that the Property's known defects had been repaired, and not merely concealed, and that the Property did not need additional renovations and repairs." It also alleges that Greene knew of the alleged defects in the home.

**1.      Fraud-Based Claims**

For the reasons stated above with respect to plaintiffs' fraud claims against the Hirezis based on the listing, plaintiffs fail to state a claim for fraud against Greene and Classic Realty.

### 2.    Negligence Per Se and Negligence Claims

For the reasons stated above with respect to plaintiffs' negligence per se claims against the Hirezis, plaintiffs fail to state a claim for negligence per se against Greene and Classic Realty based on alleged violations of the real estate licensing laws.

The negligence claim against Greene and Classic Realty also fails because of Virginia's economic loss rule. *See Sensenbrenner v. Rust. Orling & Neale, Architects, Inc.*, 374 S.E.2d 55, 57-58 (Va. 1988) (holding that home purchaser could not recover against subcontractor that installed pool but was not in privity of contract with home purchaser because plaintiffs "allege nothing more than disappointed economic expectations"); *Gerald M. Moore & Son, Inc. v. Drewry*, 467 S.E.2d 811 (Va. 1996) ("Virginia's economic loss doctrine precludes the recovery of damages based on economic loss alone."). Although the economic loss doctrine does not extinguish common law and statutory duties that are imposed outside of the contract (such as those under the VCPA), plaintiffs have not identified any such duty that supports a negligence claim against Greene or Classic Realty. *See, e.g., Abi-Najm v. Concord Condo., LLC*, 699 S.E.2d 483, 489 (Va. 2010) ("The law of torts provides redress only for the violation of certain common law and statutory duties involving the safety of persons and property, which are imposed to protect the broad interests of society.") (internal quotation marks omitted).

### C.    Claims Against Defendant S. Unlimited, LLC

The Amended Complaint asserts five counts against S. Unlimited, the contractor engaged by the Hirezis to perform certain work set forth in the Addendum:  fraud (Count XVII); fraudulent inducement (Count XVIII); constructive fraud (Count XIX); breach of contract (Count XX); negligence (Count XXI); negligence per se (Count XXII); violation of the Virginia Consumer Protection Act (Count XXIII); and civil conspiracy (Count XXVIII).

The Hirezis hired contractor S. Unlimited "to investigate visible cracking in the foundation and to make any necessary repairs, as well as to repair the interior doors that no longer closed properly." The Amended Complaint alleges that S. Unlimited "issued an itemized invoice that stated that all issues had been properly addressed as required by the Addendum and that the foundation was sound," even though it had only fixed cosmetic issues to cover the structural problems.

### 1.    Fraud-Based Claims

The Zuberis' fraud claims against S. Unlimited must be dismissed because any "false representation that [S. Unlimited] had made adequate repairs . . . related to a duty that arose under the contract." *Dunn Const. Co.*, 682 S.E.2d at 947; *see Augusta Mut. Ins. Co. v. Mason*, 645 S.E.2d 290, 294 (Va. 2007) ("The duties that [a contractor] allegedly violated by making fraudulent representations about the condition of the Masons' [chimney] flue and by signing Carvie's name on the Report arose solely by virtue of the" contract between the contractor's principal and its counterparty.).[5]

### 2.    Negligence and Negligence Per Se Claims

For the reasons stated above with respect to plaintiffs' negligence per se claims against the Hirezis, plaintiffs fail to state a claim for negligence per se against S. Unlimited based on alleged violations of the state and local building codes.

Plaintiffs also fail to state a claim for common-law negligence against S. Unlimited because of Virginia's economic loss rule. Although there could be a claim for negligent

---

[5] The *Augusta Mutual* court noted: "In light of our decision, it is not necessary to decide whether a claim for fraud in the inducement exists when the party engaging in the alleged fraudulent conduct is not a party to the contract fraudulently induced." 645 S.E.2d at 294 n.4. At least one Supreme Court of Virginia case suggests in dictum that such a claim may exist when the non-party "knew or had reason to know" that the misrepresentations would be relied upon. *See Mortarino v. Consultant Eng'g Servs., Inc.*, 467 S.E.2d 778, 782 (Va. 1996). In any event, the alleged misrepresentation by S. Unlimited relates only to the performance of a contractual duty and thus cannot form the basis of a fraud claim under Virginia law.

construction if a party not in privity suffered injury to her person or property, where the "'injury'

is only to the . . . property itself that was the subject of contract, any loss or dimunition in value

is a matter of 'disappointed economic expectation' . . . for which relief lies in contract—not

tort—and thereby requires privity for pursuit of any claim." *Factory Mut. Ins. Co. v. DLR*

*Contracting, Inc.*, Civil Action No. 3:04-cv-834, 2005 WL 2704502, at *6 (E.D. Va. Oct. 20,

2005). All of plaintiffs' alleged damages are economic and therefore within the scope of the

economic loss rule.

### 3.   Virginia Consumer Protection Act Claim

The Virginia Consumer Protection Act ("VCPA") prohibits certain enumerated

fraudulent acts "*by a supplier* in connection with a consumer transaction." Va. Code Ann. §

59.1-200 (emphasis added). The only transaction in which S. Unlimited was a supplier was

between it and the Hirezis, and that was a commercial transaction. There are no allegations that

Unlimited provided a product that was simply passed through to a consumer. *Cf. Branin v. TMC*

*Enterprises, LLC*, 832 F. Supp. 2d 646, 650 (W.D. Va. 2011) (holding VCPA to be cognizable in

suit by customer against car dealer who sold the car to another dealer who in turn sold it to

customer). Rather, Unlimited was a commercial supplier who provided goods and services that

were incorporated into the house and not passed on, in kind, to a consumer. It did not sell the

Property itself for resale to a consumer. The transaction between S. Unlimited and the Hirezis

more closely and appropriately falls within the general rule that "the sale of building material to

general contractors for use in construction of a residence is not in connection with a consumer

transaction under the VCPA." *Id.* For these reasons, plaintiffs have failed to allege facts that

make plausible their claim that S. Unlimited was a "supplier" in the consumer transaction and

therefore violated the VCPA.

### 4.    **Breach of Contract Claim**

Plaintiffs have sued S. Unlimited for breach of contract based on the grounds that they were a third party beneficiary of the contract between the Hirezis and S. Unlimited. A third party may sue for breach of contract where the parties "have agreed between themselves to bestow a benefit upon the third party but one of the parties to the agreement fails to uphold his portion of the bargain." *Envtl. Staffing Acquisition Corp. v. B & R Const. Mgmt.*, Inc., 725 S.E.2d 550, 553 (Va. 2012); Va. Code Ann. § 55–22. "[T]he third party must show that the contracting parties clearly and definitely intended that the contract confer a benefit upon him." *Envtl. Staffing Acquisition Corp.*, 725 S.E.2d at 553-54. It is not enough that the third party is an incidental beneficiary or that the third party potentially would receive a benefit from performance or be injured by a breach. *Id.* "[T]he 'critical difference' between" an incidental and intended beneficiary of a contract is the difference between "merely being a person or entity that will benefit from an agreement between other parties, and the very different situation in which a contract is entered into with the express purpose of conferring a benefit on a third party." *Id.* at 555.

The Amended Complaint fails to allege facts sufficient to make plausible that plaintiffs were "intended beneficiaries" rather than simply "incidental beneficiaries" of the contract between the Hirezis and S. Unlimited. The Amended Complaint alleges only that, "for the Zuberis' benefit, the Hirezis hired [S.] Unlimited" and that S. Unlimited "was aware of the impending sale of the Property and accepted the contract intending to confer a benefit on the Zuberis," but there are no adequate allegations that S. Unlimited "clearly and definitely intended that the contract confer a benefit upon" the Zuberis. *See Envtl. Staffing Acquisition Corp.*, 725 S.E.2d at 553-54. Plaintiffs does not allege, for instance, that S. Unlimited knew the specific

.

identity of the purchasers, or that the work was being performed pursuant to the Addendum, and with that knowledge specifically intended that its work was for the Zuberis' specific benefit, or for the Zuberis' own particular purposes, as opposed to the Hirezis' benefit or more generally, in order to allow a real estate transaction to close, whoever were the purchasers. Indeed, the Amended Complaint alleges, in effect, that S. Unlimited entered into the contract with the Hirezis, not to benefit plaintiffs, but to facilitate the Hirezis' alleged fraud or breach of contract, by issuing a false invoice stating that work had been properly completed.

For these reasons, plaintiffs have not alleged facts that make plausible a breach of contract claim against S. Unlimited.

### D.    Claims Against Defendant M&M Plumbing, LLC

The Amended Complaint asserts five counts against, M&M Plumbing, the plumber engaged by the Hirezis to perform certain work set forth in the Addendum, all of which it moves to dismiss:  constructive fraud (Count XII); breach of contract (Count XIII); negligence (Count XIV); negligence per se (Count XV); violation of the Virginia Consumer Protection Act (Count XVI); and civil conspiracy (Count XXVIII).

Plaintiffs allege that to comply with the Addendum entered into by the Hirezis and Zuberi, the Hirezis "hired M&M [Plumbing] to address the moisture issues in the bathroom wall" and to switch the hot and cold water controls on a shower in the lower-level bathroom. The Amended Complaint also alleges that M&M Plumbing is not a licensed plumbing contractor and "issued an itemized invoice that falsely stated that all issues had been properly addressed as required by the Addendum."

For the reasons stated above with respect to the fraud-based, breach of contract, negligence, negligence per se, and VCPA claims asserted against S. Unlimited, the Amended

17

Complaint fails to state facts that make plausible plaintiffs' similar claims against M&M

Plumbing, including that M&M Plumbing violated any duty independent of contract; that

plaintiffs were third-party beneficiaries of the contract between the Hirezis and M&M Plumbing;

that the licensing laws form the basis for a negligence per se claim; that their negligence claim is

not barred under the economic loss rule; or that M&M Plumbing engaged in fraudulent acts "*by*

*a supplier* in connection with a consumer transaction" and therefore violated the VCPA.

### E.     Civil Conspiracy Claim Against All Defendants

Plaintiffs have alleged a common law conspiracy claim against all defendants, jointly and

severally.  In Virginia, "[a] common law conspiracy consists of two or more persons combined

to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful

purpose by a criminal or unlawful means." *Country Vintner, Inc. v. Louis Latour, Inc.*, 634

S.E.2d 745, 751 (Va. 2006).  "[I]n order to survive a motion to dismiss, Plaintiff must at least

plead the requisite concert of action and unity of purpose in more than 'mere conclusory

language.'" *Bay Tobacco, LLC v. Bell Quality Tobacco Prod., LLC*, 261 F. Supp. 2d 483, 499

(E.D. Va. 2003) (quoting *Lewis v. Gupta*, 54 F.Supp.2d 611, 618 (E.D. Va. 1999)).  "[P]laintiff

must first allege that the defendants combined together to effect a 'preconceived plan and unity

of design and purpose, for the common design is the essence of the conspiracy.'" *Id.*  And there

can be no conspiracy to do an act that which the law allows. *Id.*

Based on the Court's rulings, the Zuberis have stated a claim for fraudulent inducement

and violation of the VCPA by the Hirezis based on their allegations that the Hirezis engaged in

the initial "conceal[ment] [of] major horizontal and vertical cracks with caulk, tape, drywall,

and/or paint" and the "misrepresentation of their intention to fix items listed in the Addendum as

required by its terms."  Plaintiffs have not alleged with particularity that any of the other

defendants "combined to accomplish" these acts.  Rather, the Amended Complaint alleges that these acts were committed by the Hirezis alone and thus fails to adequately allege a claim for civil conspiracy against any defendant other than Diana and Manuel Hirezi.

### F.     Claims by Plaintiff Ashley Zuberi

The Hirezis also move to dismiss all claims by Plaintiff Ashley Zuberi, arguing she is not a proper plaintiff since she was not a party to the underlying Contract.  The remaining claims in this action—against the Hirezis for breach of contract, fraudulent inducement, violation of the VCPA, and civil conspiracy—all arise out of Jacob Zuberi's entering the Contract and Addendum with the Hirezis.

Ashley Zuberi is not alleged to be a party to the Contract or the Addendum.  Nor was she married to Jacob Zuberi when he purchased the property.  *See* Am. Compl. ¶ 2.  The Amended Complaint suggests that Jacob Zuberi entered into the Contract and Addendum for her benefit, but there are no non-conclusory facts to support any claim that the Hirezis "clearly and definitely intended" the Contract to benefit Ashley or that the Hirezis entered into the Contract for "the express purpose of conferring a benefit on" Ashley.  *See Envtl. Staffing Acquisition Corp.*, 725 S.E.2d at 553-54.  Even if the Hirezis knew that Ashley would likely reside in the home with Jacob, her soon-to-be-husband, the facts allow only the inference that she was "merely . . . a person or entity [who] will benefit" from the Contract, not someone the Contract expressly intended to confer benefits on, separate and apart from whatever benefits she might enjoy through her relationship with Jacob.  *See Envtl. Staffing Acquisition Corp.*, 725 S.E.2d at 555.  In other words, the allegations make plausible only that Ashley was an incidental beneficiary.

Similarly, the claims for fraudulent inducement and violation of the VCPA require a showing that a person entered a contract in reliance on a misstatement of material fact. *See Devine v. Buki*, 767 S.E.2d 459, 466 (Va. 2015); *Cooper v. GGGR Investments, LLC*, 334 B.R. 179, 188–90 (E.D. Va. 2005). The Amended Complaint alleges that Ashley counseled Jacob regarding the purchase of the Property in reliance on the Hirezis' alleged concealment and misstatements. *See, e.g.*, Am. Compl. ¶¶ 54, 60. But that allegation does not change the fact that only Jacob Zuberi entered into the Contract in reliance on the alleged misrepresentations. *See id.* at 2, Ex. A. For these reasons, Plaintiff Ashely Zuberi has not alleged any facts that make plausible her standing to assert any claims against the Hirezis.

## IV.   CONCLUSION

For the above reasons, the Court concludes that Plaintiff Ashley Zuberi has no standing to assert any claims against any of the defendants and that the Amended Complaint fails to state any claims against Defendants Classic Realty and George Greene, S. Unlimited, and M&M Plumbing and also against Defendants Diana and Manuel Hirezi, except as to their claims for fraudulent inducement (Count II), breach of contract (Count IV), violation of the Virginia Consumer Protection Act (Count VII), and civil conspiracy (Count XXVIII).

Accordingly, it is hereby

ORDERED that Defendants Classic Realty, Ltd. and George Greene's Motion to Dismiss for Failure to State a Claim [Doc. No. 51] be, and the same herby is, GRANTED, and all claims against them be, and the same hereby are, DIMISSED; and it is further

ORDERED that Defendant S. Unlimited, LLC's Motion to Dismiss for Failure to State a Claim [Doc. No. 54] be, and the same herby is, GRANTED, and all claims against it be, and the same hereby are, DIMISSED; and it is further

ORDERED that Defendant M&M Plumbing, LLC's Motion to Dismiss for Failure to State a Claim [Doc. No. 58] be, and the same herby is, GRANTED, and all claims against it be, and the same hereby are, DIMISSED; and it is further

ORDERED that Defendants Diana and Manuel Hirezi's Motion to Dismiss for Failure to State a Claim [Doc. No. 61] be, and the same herby is, GRANTED in part and DENIED in part; it is GRANTED as to all claims by Plaintiff Ashley Zuberi, which are hereby DISMISSED; it is also GRANTED as to Plaintiff Jacob Zuberi's claims for fraud (Count I); constructive fraud (Count III); negligence per se (Count V); and negligence per se against Diana Hirezi (Count VI), which are hereby DISMISSED; and it is DENIED as to Plaintiff Jacob Zuberi's claims for fraudulent inducement (Count II), violation of the Virginia Consumer Protection Act (Count VII) and civil conspiracy (Count  XXVIII).

The Clerk is directed to forward copies of this Order to all counsel of record.

_____
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
January 30, 2016